Gertie HOLT, Plaintiff in Error,

v.

SOUTHWEST ANTIOCH SAND UNIT,
FIFTH ENLARGED, Defendant in
Error.

No. 36742.

Supreme Court of Oklahoma.

Dec. 20, 1955.

Rehearing Denied Jan. 24, 1956.

W. D. Hart, Pauls Valley, Twyford,
Smith & Crowe, Oklahoma City, for plain-
tiff in error.

Johnson, Gordon, Cook & Cotter, Okla-
homa City, for defendant in error.

DAVISON, Justice.

The plaintiff, Gertie Holt, filed this action against the defendant, Southwest Antioch Sand Unit, Fifth Enlarged. After several amendments were made to the petition, the defendant demurred generally thereto, which said demurrer was sustained by the trial court. The plaintiff elected to stand upon her petition. Whereupon, the action was ordered dismissed and, from that judgment, plaintiff has perfected this appeal. The parties will be referred to as they appeared in the trial court.

The plaintiff was the owner of the surface of certain lands in Garvin County, Oklahoma. Prior to the organization of defendant and at all times thereafter, the oil gas and other petroleum minerals were owned by other parties. The defendant, an entity existing under the provisions of 52 O.S.1951 § 287.1 et seq., stood in the position of an operating lessee of said minerals. Because this case is presented for the purpose of determining the correctness of the order sustaining a demurrer thereto, the petition as finally amended is of prime importance.

Plaintiff alleged therein the ownership and possession of the surface of some 130 acres of land in Garvin County, Oklahoma, particularly described. She specifically alleged ownership of all salt water in and under said premises. It was further alleged that defendant was a corporation set up by order of the Corporation Commission for the purpose of increasing the production of oil and gas from said unit by a system of repressuring the same by forcing large quantities of salt water into and against the producing oil pool. Members of that unit included the three lessees each owning an oil and gas lease on a part of the property, which collectively included the entire acreage here involved.

The gist of plaintiff's asserted cause of action was alleged to be that the defendant, without the knowledge or consent of the plaintiff, converted a producing oil well on said premises into a salt-water producing well; that, to the salt water so produced, was added about the same amount from other sources and all of it was used for the repressuring process; that the water was used to produce oil from wells on other lands in the said unit, none of them being on plaintiff's premises; that defendant committed, thereby, a subsurface trespass and converted the said salt water to its own use and benefit.

It was further alleged that plaintiff elected to hold defendant liable for the mesne profits realized and to be realized by defendant in the use and conversion of said salt water; that, by reason of the use of said salt water, defendant had produced several additional barrels of oil and that plaintiff was entitled to an accounting of the profits so made.

The only foundation upon which a right of recovery in plaintiff could exist was that defendant was using salt water to which it was not entitled. Either of two conclusions would preclude recovery. If the salt water constituted a mineral which was owned by those having title to the oil, gas and other petroleum minerals, it would constitute no part of plaintiff's estate and she would have no right to complain of its removal. We need not further consider that phase of the question, since the other phase is determinative of the issues in the case before us. It is that, although the salt water was not a mineral and was owned by plaintiff, the surface owner, if the right to its use was, by express conveyance or by inference a part of the mineral estate because of its necessity in the mining and removal of those minerals, the defendant would not be liable therefor.

■ Plaintiff contends that, under the holding in the case of Vogel v. Cobb, 193 Okl. 64, 141 P.2d 276, 277, 148 A.L.R. 774, she is entitled to recover. In the reported case, which dealt with fresh water from a shallow structure and its use for domestic purposes of the lessee's employees, it was determined that neither of the situations hereinabove described, obtained. It was there held that,

"A clause in an oil and gas lease providing that lessee is entitled to the free use of 'water produced on said land for its operation thereon' does not give the lessee the right to use water

therefrom to supply lease houses located on other lands, even though the occupants thereof, as part of their duties, operate the lease in question. * * *

· "Under the rule of ejusdem generis, subterranean water is not conveyed by a grant of the 'oil, petroleum, gas, coal, asphalt and all other minerals of every kind or character in and under and that may be produced from' said real property, or a grant of the 'oil, gas, and other minerals in and under and that may be produced from' the land."

We need not and do not here consider whether or not different rules of law are applicable to fresh water recovered from a shallow structure and to salt water recovered from a relatively deep structure. In the cited case, the water played no direct part in the removal of the oil. Here plaintiff alleged that defendant was using the water "to increase the amount and life of production of oil and gas" and that "the manner of the use of the same is and was to force the salt water into and against the producing oil pool and to force the oil to the bottom of the well and thus force the same to the surface." It would be difficult to conceive of a use of the water more essentially a part of the operation of mining and removing the petroleum minerals from under said lands. It makes no difference whether the oil was produced from plaintiff's lands or not by reason of the repressuring process. Under the statutes, the unit was formed of all producing leases in the common source of supply and operated as a single operation with all lessees sharing equitably in the production from the whole. Whether the conveyance or reservation of the minerals provides therefor or not "an owner of minerals may * * * use such amount of water from the land as is reasonably necessary to develop the mineral rights." 58 C.J.S., Mines and Minerals, § 159, p. 334.

In the case of Stradley v. Magnolia Pet. Co., Tex.Civ.App., 155 S.W.2d 649, 652, the Texas Court said that,

"The general rule seems to be that a person who owns the minerals in certain land has as incidental to his ownership the rights and privileges that are necessary for the profitable production of such minerals, and in determining his rights the courts take into consideration the circumstances, the right conveyed, the purpose for which it was conveyed and the information of the grantor and grantee in order to ascertain the intention of the parties."

In the same case, the court quoted from an earlier opinion as follows:

" 'The grant of the oil carried with it a grant of the way, surface, soil, water, gas, and like essential to the enjoyment of the actual grant of the oil.' "

■ Plaintiff in the case at bar owned the surface of the land described in the petition. Her estate was not only limited but, in addition, was burdened by the mineral owner's right to use what was reasonably necessary for the proper development of the mineral estate. That included the right to the use of the salt water for the same purpose. Therefore, plaintiff's petition did not state a cause of action.

■ Mention has been made of the fact that plaintiff was in no way notified of the organization of defendant and of its acquisition of the right to operate the leases by virtue of the above cited statutes and an· authorized proceeding in the Corporation Commission. The unitization of the mineral interests comprising a common source of supply of oil and gas can in no way adversely affect the owners of only the surface under which the minerals lie. Therefore, there is no necessity of making them parties to such proceedings nor of giving them notice thereof.

Having determined that plaintiff had no cause of action, it is unnecessary to discuss the other questions presented which deal with the measure of damages.

The judgment is affirmed.

JOHNSON, C. J., and WELCH, CORN, HALLEY, JACKSON and HUNT, JJ., concur.

BLACKBIRD, J., concurs in result.

WILLIAMS, Vice Chief Justice (dissenting).

I respectfully dissent for the reason that I believe salt water to be the property of the "surface owner" and, under the terms of the lease, subject to use as here only in the proportion the minerals underlying plaintiff's lands bear to the total mineral acreage of the unit, without compensation therefor.