**R. O. ROBINSON, Appellant,**

v.

**ROBBINS PETROLEUM CORPORATION, INC., et al., Appellees.**

**No. 662.**

Court of Civil Appeals of Texas, Tyler.

Nov. 16, 1972.

Rehearing Denied Dec. 14, 1972.

C. Sidney McClain, Thos. R. Hartnett, III, Dallas, for appellant R. O. Robinson.

Anthony G. Riddlesperger, Houston, for The Superior Oil Co.

Colley & Lloyd, Henderson, Potter, Lasater, Guinn, Minton & Knight, Chas. F. Potter, Tyler, for defendant-appellee.

McKAY, Justice.

This is an appeal from a summary judgment granted to appellees in a severed case. Appellant is the owner of the surface estate only to an 80-acre tract of land in Wood County. Appellant's tract, together with other tracts, is subject to an oil, gas and mineral lease which is in full force and effect, being held by production. This lease is known as the Wagoner lease and comprises approximately 221 acres.

Appellee Robbins Petroleum Corporation, Inc. (hereinafter called Robbins) is the operator of three waterflood units. The

Wagoner lease is a part of each unit. The other appellees are participants in the three waterflood units because they own working interests, royalty or overriding royalty interests in one or more of the oil and gas leases which go to make up the three waterflood units. There were apparently three wells drilled on the 80-acre tract of the Wagoner lease involved here, two of which became producing oil wells, and the third well was not made to produce. When Robbins, as operator, began waterflood operations the non-producing well on the 80-acre tract was converted into a salt water producing well, and the water has been and is being used by Robbins by injection to re-pressure by waterflood the Pine Mills Field in Wood County. The salt water from this well is being injected back into the subsurface through injection well or wells located on lands and leases other than those covered by the Wagoner lease. Appellant claims he is entitled to damages for the wrongful taking of salt water from a well on his 80-acre tract without his permission and using said salt water to assist in the production and recovery of oil, gas and other minerals from lands other than those covered by the Wagoner lease.

Appellant's first point complains that appellees' Motions for Summary Judgment were not supported by affidavits and other acceptable documents. There is nothing in the record to show this objection was made to the trial court. Appellees' Second Supplement to the Motion for Summary Judgment contains an affidavit of counsel that "the statements of fact contained in the foregoing pleading are true and correct, and that the copies of instruments filed herewith and the instruments filed with the First Supplement to the Motion for Summary Judgment are true and correct copies of the original instruments referred to." The claim of appellant is referred to in the summary judgment "that he owns salt water under his land and that the same is not owned by the persons owning the oil, gas and mineral lease on said land," and "(t)he

oil and gas lease referred to (and hereafter referred to) is described as follows: The land described in Oil and Gas Lease given by D. V. Wagoner et al to C. A. Peacock dated April 5, 1943, recorded in Vol. 243, page 214 of the Deed Records of Wood County, Texas, to which reference is here made." Attached to appellant's affidavit in opposition to the motion for summary judgment is a copy (stated to be certified) of said lease from Wagoner et al to Peacock, and a copy (stated to be certified) of unit agreement, Woodbine "Wagoner" Formation Unit, Pine Mills Field, Wood County, Texas.

■ We are aware that the pleadings alone without any supporting evidence will not support a summary judgment, Frankfurt's Texas Investment Corp. v. Trinity Savings & Loan Association, 414 S.W.2d 190 (Tex.Civ.App., Dallas, 1967, writ ref., n. r. e.), and that certified or sworn copies of all papers or parts thereof referred to in an affidavit should be attached thereto or served therewith. T. J. Bettes Company v. American Airco, Inc., 437 S.W.2d 302 (Tex.Civ.App., Houston 1st, 1969, n. w. h.). We are of the opinion that Rule 166–A, Texas Rules of Civil Procedure was sufficiently complied with. This is not a suit questioning the title to any estate, surface or mineral, and contrary to appellant's contention it is not necessary for appellees to prove title. Appellant does not question the validity of the oil and gas lease covering the tract where he owns the surface estate. Appellant's first point is overruled.

By his second point appellant says that the trial court erred in holding as a matter of law that the owner of the mineral estate under an oil and gas lease has the right to take salt water from under the surface and use it in waterflood operations to recover minerals from under lands other than those covered by such lease and other than those permitted to be pooled with said lease, without the consent, permission or agreement of the surface owner. Appellant asserts the ownership of and the full right

and authority to control the use of salt water produced from his 80-acre tract of land subject only to an oil and gas lessee's use of the water to assist production of oil and gas underlying appellant's tract or underlying tracts pooled therewith in accordance with rights specifically granted in said lease, or underlying other lands included in the same lease which includes appellant's land.

■■ It is the settled law in Texas that the mineral estate is the dominant estate and the surface estate is servient, and the lessee has the right to use as much of the premises, and in such a manner, as is reasonably necessary to comply with the terms of the lease and to effectuate its purposes. Humble Oil & Refining Company v. Williams, 420 S.W.2d 133 (Tex.Sup., 1967); Getty Oil Company v. Jones, 470 S.W.2d 618 (Tex.Sup., 1970). The right of the lessee includes doing such things only as are expressly granted or necessarily implied in the lease, and property rights not granted are reserved to lessor, but the lessee has the right to use so much of the land, both surface and subsurface, as is reasonably necessary to comply with the terms of the lease and to carry out the purposes and the intentions of the parties. Brown v. Lundell, 162 Tex. 84, 344 S.W.2d 863 (Tex.Sup., 1961).

Appellant says that taking of the salt water from under his tract and using it to assist production on lands not covered by the Wagoner lease is not authorized by the lease and not reasonably necessary to the production of oil and gas from under the Wagoner lease. Appellant also claims that water, unsevered expressly by conveyance or reservation, is a part of the surface estate. The lease in question here "grants, leases and lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals * * *." The lease also provided "(1)essee shall have free use of oil, gas, coal, wood and water from said land, except water from Lessor's wells for all operations

hereunder * * *." The lessee was given the right and power to pool or combine the acreage with other land into units not exceeding forty acres each. The Wagoner lease, in addition to appellant's 80-acre tract, covered tracts of 70, 4, 65.5 and 2 acres. Three units were formed by agreement known as Woodbine "A" Formation Unit, Woodbine "Wagoner" Formation Unit and Second Sub-Clarksville Formation Unit. These units were formed to unitize production from different producing formations found at approximately 4800, 5400 and 5500 feet. The Railroad Commission approved and granted an application to unitize the three units into one, and by order authorized appellee to waterflood all three horizons.

While no Texas case directly in point has been cited to us, nor have we found one, our Supreme Court in the recent case of Sun Oil Company v. Whitaker, 483 S.W.2d 808 (Tex.Sup., 1972), after holding that the dominant lessee's estate has an implied grant, absent an express provision for payment, of free use of the premises as is reasonably necessary to effectuate the purposes of the lease, having due regard for the rights of the owner of the surface estate, held that the lessee (Sun) had the implied right to free use of so much of the fresh water in question as may be reasonably necessary to produce oil from its wells. The Sun Oil Company v. Whitaker case involved waterflood operations with fresh water, but we see no real distinction between the implied grant of reasonable use to extend to and include the use of fresh water from the premises in such amount as may be reasonably necessary to carry out lease operations under the lease and the same implied grant to use salt water for the same purposes. It is a matter of common knowledge that ordinarily no use can be made of the salt water by the surface owner, but fresh water from the subsurface might be necessary to the use of the surface estate.

It has been held that waterflood recovery operations are reasonably necessary

under oil and gas leases. Sun Oil Company v. Whitaker, supra and cases cited.

The Supreme Court of Oklahoma in Holt v. Southwest Antioch Sand Unit, 292 P.2d 998 (1956) has written on the precise question presented here. A surface owner sued for conversion of salt water used to repressure by waterflood operations whereby oil was produced on lands in a unit other than that where the salt water well was located. The Court said:

"It would be difficult to conceive of a use of the water more essentially a part of the operation of mining and removing the petroleum minerals from under said lands. It makes no difference whether the oil was produced from plaintiff's land or not by reason of the repressuring process. Under the statutes, the unit was formed of all producing leases in the common source of supply and operated as a single operation with all lessees sharing equitably in the production from the whole. Whether the conveyance or reservation of the minerals provides therefor or not 'an owner of minerals may * * * use such amount of water from the land as is reasonably necessary to develop the mineral rights.'"

The Court then quotes from Stradley v. Magnolia Pet. Co., 155 S.W.2d 649 (Tex. Civ.App., Amarillo, 1941, error ref.) (quoted also in Sun Oil Company v. Whitaker):

"'The grant of the oil carried with it a grant of the way, surface, soil, water, gas, and like essential to the enjoyment of the actual grant of the oil.'"

The Ninth Circuit Court in Russell v. Texas Company, 238 F.2d 636, 644, 1956, cites *Stradley* after this statement: "* * * there is abundant authority for the proposition that the owner of mineral rights is entitled to take from the land and use that amount of water which is reasonably necessary for the exploitation of the mineral rights."

It is unnecessary for us to determine whether water is a mineral. The unit formed and approved by the Railroad Commission in the instant case was composed of all producing leases in the common source of supply in each horizon and is operated as a single operation with all leases sharing equitably from the whole. The Railroad Commission found the secondary recovery operation by waterflood repressuring would cause the production of three million additional barrels of oil. Under such circumstances repressuring by injection of salt water into producing strata would produce oil for the benefit of all lease owners in the entire unit. It cannot be said that because the injection will is not on the Wagoner lease that the Wagoner lease, or specifically the 80-acre tract of appellant, did not benefit by increased production or greater recovery of oil. We hold that the appellee as the operator of the unit had the right to produce salt water from appellant's surface estate and inject same upon any tract in the unit, and that such process is a reasonable and necessary use of the premises to produce oil and carry out lessee's operations and to effectuate the purposes of the lease. Appellant's second point is overruled.

Appellant's third point is that there exists a genuine issue as to a material fact in that the intentions of the parties to the Wagoner lease need to be determined as a fact. The Sun Oil Company v. Whitaker case, supra, answers this contention with this language: "(t)he rights implied from the grant are implied by law in all conveyances of the mineral estate and, absent an express limitation thereon, are not to be altered by evidence that the parties to a particular instrument of conveyance did not intend the legal consequences of the grant."

Appellant's third point is overruled.

The judgment of the trial court is affirmed.